UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| MARIA F. WEINER,<br><br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>JEFF ALLAN MCCOON d/b/a PACIFIC STATES CREDIT COMPANY,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 06-CV-1328 – IEG (POR)<br><br>**ORDER: 1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; 2) DISMISSING DEFENDANT'S COUNTERCLAIM; and 3) DECLINING SUPPLEMENTAL JURISDICTION**<br><br>**[Doc. No. 52]** |
|---|---|

Presently before the court is Jeff Allan McCoon's ("defendant") motion for summary judgment or, in the alternative, summary adjudication of the issues. (Doc. No. 52.) For the following reasons, the court grants defendant's motion.

## BACKGROUND

**Factual Background**

The facts of this case are relatively straightforward. Defendant is a licensed attorney and sole proprietor of Pacific States Credit Company ("Pacific States"). (Complaint ("Compl.") ¶¶4-5.) Defendant, through Pacific States, engages in debt collection and he attempted to collect an allegedly outstanding debt owed by Maria F. Weiner ("plaintiff") on a Citibank credit card account. (Id. ¶¶ 9-10.) Defendant claims he purchased plaintiff's Citibank account, including the right to collect on the outstanding balance and right to sue plaintiff for a commercial tort. (Memorandum In Support of

1  Motion ("Memo. ISO Motion") at 4.)

2  According to defendant, in an attempt to collect the debt, he mailed a notice of assignment of
3  the account to plaintiff. (Id. at 4.) On November 15, 2004, defendant filed a Uniform Commercial
4  Code Financing Statement ("UCC-1" or "UCC Financing Statement") with the San Diego Recorder's
5  Office. (Id.) Defendant also claims he mailed plaintiff a statement of account on January 31, 2005.
6  (Id., Exhibit A.) On May 10, 2005, defendant brought a lawsuit in state court, and obtained default
7  judgment against plaintiff on September 1, 2005. (Id.)

8  According to plaintiff, around April 28, 2006, she first discovered the existence of the UCC-1
9  when she received a letter from the San Diego District Attorney's Office informing her of their
10 investigation into defendant's practices. Plaintiff alleges the UCC-1, which refers to her property on
11 the face of the document as collateral, acts as a lien. Plaintiff further claims she never executed a
12 contract or agreement to create a security interest in her property, which would permit defendant to
13 file UCC-1. (Compl. ¶¶ 12, 17.) Defendant has purportedly filed hundreds of improper UCC-1's
14 throughout California. (Id. ¶¶ 15-17.)

15 Plaintiff alleges that defendant's actions constitute multiple violations of the federal and state
16 debt collection practices statutes. (Id. ¶¶ 19, 35, 41.) Specifically, plaintiff claims that defendant's
17 filing of the UCC-1 itself is illegal because the UCC does not include transactions involving credit
18 cards. (Id. ¶ 12.) In addition, plaintiff claims defendant failed to provide the requisite Fair Debt
19 Collection Practices Act ("FDCPA") notices. (Id. ¶ 19.) According to plaintiff, the delay and expense
20 associated with lifting this encumbrance created by the UCC-1 caused loss of favorable interest rates
21 from lenders and a negative credit report. (Id. ¶20).

22 **Procedural Background**

23 On June 26, 2006, plaintiff filed a five-count complaint against defendant. (Doc. No. 1.) In
24 her complaint, plaintiff alleges defendant: **1)** violated numerous provisions of the FDCPA, 15 U.S.C.
25 §1692 *et seq.*;[1] **2)** violated the California Fair Debt Collection Practices Act ("Rosenthal Act"), Cal.

26

27  [1] In particular, plaintiff claims defendant violated: 1) 15 U.S.C. §1692d, which prohibits
harassing, oppressive or abusive conduct in connection with debt collection; 2) 15 U.S.C. §1692e(2),
28  which prohibits false representations about the character, amount or legal status of a debt; 3) 15 U.S.C.
§1692e(5), which prohibits the threat to take illegal or unintended actions; 4) 15 U.S.C. §1692e(11),

1  Civ. Code §1788, by filing a UCC financing statement on a credit card debt; **3)** violated California's
2  Unfair Business Practices Act, Cal. Bus. & Prof. Code §17200 *et seq.*; **4)** intentionally inflected
3  emotional distress; and **5)** negligently inflicted emotional distress. (Compl. ¶¶ 18-61.) On July 25,
4  2006, defendant filed an answer to the complaint and a counterclaim. (Doc. No. 4.) Plaintiff filed an
5  answer to defendant's counterclaim on January 22, 2007. (Doc. No. 27.)

6  On December 22, 2006, plaintiff filed a motion for class certification. On January 16, 2007,
7  defendant, who initially appeared pro se, filed a notice of attorney substitution and an ex parte
8  application for an extension of time to respond to plaintiff's motion. (Doc. No. 22.) Because
9  defendant's new attorney entered the case late, the court granted defendant's ex parte application.
10 (Doc. No. 26.) On February 12, 2007, defendant file an opposition to plaintiff's motion, (Doc. No.
11 28), and plaintiff file a reply on February 19, 2007. (Doc. No. 31.)

12 On February 20, 2007, defendant's counsel filed a motion to withdraw, which the court
13 granted. (Doc. No. 36.) The court again continued the hearing for plaintiff's class certification motion
14 to May 21, 2007 in order to give defendant additional time to find counsel. On April 11, 2007,
15 defendant filed notice that he will be continuing in pro per. (Doc. No. 40.) However, on May 17,
16 2007, plaintiff filed a notice of withdrawal of her motion, indicating she would no longer be pursuing
17 this litigation as a class action.

18 On June 11, 2007, defendant filed the instant motion. (Doc. No. 52.) Plaintiff filed an
19 opposition on July 16, 2007. (Doc. No. 54.) On July 18, 2007, defendant filed an ex parte application
20 with Magistrate Judge Porter requesting an opportunity to amend his responses to plaintiff's Requests
21 For Admissions ("RFA").[2] On July 26, 2007, Judge Porter granted defendant's ex parte application
22 but ordered defendant to pay attorneys' fees for the time plaintiff's counsel spent drafting the original
23 opposition to defendant's summary judgment motion. (Doc. No. 64.) Accordingly, the court allowed
24 plaintiff to file an amended opposition. (Doc. No. 72.) Defendant also filed an amended reply.

---

26 which requires the disclosure in the initial communication, whether written or oral, that there is an attempt to collect a debt; 5) 15 U.S.C. §1692f, which prohibits unfair or unconscionable means in
27 connection with an attempt to collect a debt; and 6) 15 U.S.C. §1692g, which requires written notice of the right to dispute a debt within five days of initial communication with the debtor. (Compl. ¶19.)

28 [2] This ex parte application was due to the fact that in plaintiff's opposition, she heavily relied on defendant's failure to respond to the requests for admission. (See Doc. No. 54.)

**DISCUSSION**

Legal Standard

Summary judgment is proper where the pleadings and materials demonstrate that "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question that a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. Id. at 322. However, the moving party is not required to negate those portions of the non-moving party's claim on which the non-moving party bears the burden of proof. Id. at 323. To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir.2000) (citing Fed. R. Civ. P. 56; Celotex, 477 U.S. at 323). The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. Nissan Fire & Marine Ins. Co., 210 F.3d at 1103. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion, but conclusory allegations as to ultimate facts are not adequate to defeat summary judgment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1180 (9th Cir. 2002). The court is not required "to scour the record in search of a genuine issue of triable fact," Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

Analysis

Defendant argues that both the evidence and the allegations in plaintiff's complaint establish plaintiff's FDCPA cause of action is barred by the applicable statute of limitations. (Memorandum In Support of Motion ("Memo. ISO Motion") at 5.) Defendant notes it is undisputed between the parties that he filed the UCC-1 on November 15, 2004. Therefore, the statute of limitations expired as to that alleged misconduct on December 15, 2005. According to defendant, plaintiff's FDCPA claim began to accrue on January 31, 2005, at the very latest, when defendant sent plaintiff a debt collection letter according to his regular business practices. (Reply at 3.) Defendant claims plaintiff's FDCPA claim is time-barred by the one year statute of limitations because plaintiff filed this lawsuit on June 26, 2006, more than 5 months after the most recent alleged misconduct.

In opposition, plaintiff argues debtors are entitled to a "notice of rights" within 5 days of initial contact by a debt collector under the provisions of the FDCPA. (Opposition ("Opp.") at 10.) Plaintiff argues she never received any letters from defendant and, as such, there is a triable issue of fact as to whether defendant ever mailed her the necessary "notice of rights." According to plaintiff, where, as here, a debtor never receives a letter or other communication from the debt collector, the statute of limitations cannot run. Plaintiff further argues the statute of limitations began to run on her FDCPA claim when she received a letter dated April 28, 2006, from the San Diego District Attorney's Office alerting her to the existence of defendant's UCC-1. Lastly, relying on purportedly conflicting statements by defendant, plaintiff argues there are triable issues of fact regarding defendant's violation of the FDCPA. (See Opp., Exhibit 4 – Defendant's Responses to Plaintiff's Request for Admissions; Exhibit 5 – Plaintiff's Request for Admissions.)

The statute of limitations for a claim under the FDCPA is one year. Specifically, 15 U.S.C. §1692k(d) states "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date **on which the violation occurred.**" 15 U.S.C. §1692k(d) (emphasis added). Generally, "an action must be filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA." See Padilla v. Payco General American Credits, Inc., 161 F. Supp. 2d 264, 273 (S.D.N.Y. 2001); Pittman, 969 F. Supp. at 611. It is important to note that the FDCPA specifically states the statute of limitations runs from the "date on which the violation

occurred." See Naas v. Stolman, 130 F.3d 892, 893 (9th Cir.1997) (holding that statute of limitations runs from the time of the purported violation); Watkins v. Peterson Enterprises, 57 F. Supp. 2d 1102, 1106 (E.D. Wash. 1999) (citing Naas) ("The [FDCPA] limitations period runs from the date of the offending act."). Thus, there are two questions that the court must address: 1) what action by defendant constitutes a violation?; and 2) when did the alleged violation occur?

Turning to the first question of what qualifies as a FDCPA violation, plaintiff alleges defendant breached the the FDCPA in two ways. First, plaintiff claims defendant improperly placed a lien on her property by filing a UCC-1. According to plaintiff, the filing of the UCC-1 for debts arising from credit cards is a "false and deceptive debt collection practice."[3] As discussed below, whether a UCC-1 filing is in fact a FDCPA violation is ultimately irrelevant, so for purposes of this analysis the court will assume defendant violated the FDCPA by filing the UCC-1. Second, plaintiff claims defendant did not provide a "Notice of Right to Demand Debt Verification" ("Notice of Rights") or inform plaintiff he was collecting a debt in the initial communication, as required by the FDCPA. Again, the court will assume plaintiff violated the FDCPA by failing to provide the requisite notice. The second question in the statute of limitations analysis is **when** these two alleged violations occurred. Plaintiff filed her complaint on June 26, 2006. Therefore, the alleged misconduct on which plaintiff bases her FDCPA claim must have occurred no earlier than June 26, 2005.

As to the UCC-1, it is undisputed that defendant filed the document on November 15, 2004. A copy of the UCC-1, which plaintiff herself submitted into evidence, confirms this is the date of filing with the San Diego County Recorder's office. (Opp., Exhibit 2.) This is clearly outside the one year time period (i.e. 19 months and 11 days). Thus, violations of the FDCPA based on defendant's filing of the UCC-1 are barred by §1692k(d).[4] 15 U.S.C. §1692k(d) (stating that the one year deadline begins from the "date on which the violation occurred."). Plaintiff argues the statute of limitations began to run when she received the letter from the district attorney because she did not know about

---

[3] Defendant disputes that a UCC-1 is a lien and whether it is illegal to file a UCC-1 for credit card debts. (Reply at 2-5.)

[4] Specifically, the UCC-1 serves as the basis of plaintiff's claims that defendant violated §1692d (harassment and abuse), §1692f (unfair practices), §1692e (false or misleading representation in connection with debt collection), §1692e(5) (the threat to take action that is illegal or never intended to be taken) and publicly disclosed the existence of the debt. (Compl. ¶ 19.)

1 the UCC-1. However, plaintiff has failed to present a declaration or any other evidence that she did
2 not know about the existence of UCC-1 until receiving the district attorney's letter. Furthermore, the
3 statutory language of §1692k(d) is clear that the statute of limitations runs on FDCPA claims from the
4 date of the purported violation, which in this case is November 15, 2004. Watkins, 57 F. Supp. 2d at
5 1106. Accordingly, courts have rejected the argument that the statute of limitations runs from the date
6 a plaintiff discovers the alleged FDCPA violation, as plaintiff suggests, and consistently hold the
7 statute of limitations runs from date the misconduct occurred. See, e.g., Magnum v. Action Collection
8 Service, Inc., case no. 05-CV-507, 2007 WL 1959076, at *2-3 (D. Idaho. 2007) (rejecting argument
9 that FDCPA claim accrues when plaintiff discovered violation and finding that statute of limitations
10 began to run when defendant allegedly violated FDCPA); Naas, 130 F.3d at 893; Mattson v. United
11 West Communications, Inc., 967 F.2d 259, 261 (8th Cir. 1992) (holding that cause of action accrues
12 not when plaintiff received letter but when defendant mailed letter because this was "the last
13 opportunity to comply with the FDCPA").

14 Plaintiff also claims defendant violated the FDCPA by failing to send plaintiff a "Notice of
15 Rights" within 5 days of initial communication, as prohibited §1692g,[5] and failing to disclose in the
16 initial written communication that he was collecting a debt, as prohibited by §1692e(11).[6] These
17 claims of misconduct present a different question than the filing of a UCC-1 because they involve
18 omissions. Plaintiff argues the statute of limitations could not have expired because there is a triable
19 issue of fact regarding defendant's attempts to contact plaintiff (i.e. plaintiff alleges she never received
20 the letters sent by defendant). According to plaintiff, if there was no contact by defendant, her causes
21 of action could not have accrued.

22 Defendant has presented evidence, in the form of his declaration and a copy of the document,
23 that he did in fact send plaintiff a letter providing "Notice of the Rights" on January 31, 2005. (See

---

[5] §1692g states, in relevant part, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing" detailed information about the debt. 15 U.S.C. §1692g.

[6] §1692e(11) states "[t]he failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector" is a FDCPA violation. 15 U.S.C. §1692e(11).

Jeff McCoon Declaration In Support of Motion ("McCoon Decla. ISO Motion").) Defendant also states in a declaration that he sent an initial assignment letter on November 9, 2004. (Id.) In contrast, plaintiff merely argues in her brief that she did not receive these letters, but provides no evidence supporting this claim.[7] Generally, uncontroverted evidence that a debt collector followed its standard business practice with respect to the mailing of a notice is sufficient to establish that the notice was actually sent. See, e.g., Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1201-02 (9th Cir.1999); Taylor v. Quall, 471 F. Supp. 2d 1053 (C.D. Cal. 2007); Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1097-98 (D. Or. 2000). Plaintiff has failed to present any evidence to rebut defendant's showing that he sent notice to plaintiff and that he sent notice more than one year prior to the filing of the complaint. Plaintiff relies on alleged "discrepancies" between defendant's responses to plaintiff's Requests for Admissions and certain factual statements in defendant's memorandum to argue there is a triable issue of fact. However, careful examination of the "discrepancies" demonstrates there are no real contradictions between defendant's statements and any purported differences has no bearing on the relevant issue (i.e. when plaintiff's FDCPA claims began to accrue).

More importantly, case law undermines plaintiff's argument that the statute of limitations does not run when a debtor claims she has not received notice from a debt collector.[8] §1692e(11) requires debt collectors to disclose "in the initial written communication with the consumer" that the debt collector is attempting to collect a debt. 15 U.S.C. §1692e(11). Accordingly, the statute of limitations begins to run on a §1692e(11) claim the day after the debt collector mails the offending letter regardless of when or if a debtor received the letter. See Maloy v. Phillips, 62 F.3d 607, 608 (11th Cir. 1995); Mattson, 967 F.2d at 261; Duncan v. Citibank, N.A., 2006 WL 4063021 (D.N.M. June 30, 2006). Plaintiff also alleges a §1692g violation, which requires a debt collector to send a "Notice of Rights" within 5 days of the initial communication with the consumer. 15 U.S.C. §1692g. Courts

---

[7] Moreover, plaintiff does not argue these letters fail to comply with the FDCPA.

[8] Not surprisingly, plaintiff cited no case law or statutory language to support his bald assertions that: 1) the statute of limitations does not run where a debtor claims she never received notice; and 2) the statute of limitations runs when plaintiff eventually learns about the debt collector's attempt to collect the debt.

consistently hold that the statute of limitations for a §1692g claim begins **5 days after** the "initial communication" is sent.  See Berntsen v. Connel Law Office, 2006 WL 1049632, at *1 (E.D. Wis. Apr. 18, 2006); Panko v. Pellettieri & Assoc., P.C., 2004 WL 2191574 (N.D. Ill. Sept.27, 2004).  The statute of limitations for these types of violation are not suspended indefinitely, as plaintiff argues. See Mattson, 967 F.2d at 261 (noting that statute of limitations runs from the "last opportunity [for debt collector] to comply with the FDCPA"); Naas, 130 F.3d at 893 (citing Mattson with approval); Clark v. Transpack Corp., 2005 WL 3080853, at *3 (E.D. Cal. Nov. 11, 2005) (holding that limitations period begins to run at the "last opportunity to comply with the FDCPA").  In the instant case, defendant's unrebutted evidence establishes the initial written communication was sent on November 9, 2004.  (McCoon Decla. ISO Motion ¶1.)  Assuming the November 9, 2004 letter violated the FDCPA, the statute of limitations expired on November 10, 2005 for a §1692e(11) claims and on November 15, 2005 for a §1692g claim.  Plaintiff filed her lawsuit more than seven months after both dates.  Even considering the most recent written communication mailed to plaintiff, which occurred on January 31, 2005, plaintiff's June 22, 2006 lawsuit is beyond the last possible cut-off date (i.e. February 5, 2006).[9]  In sum, plaintiff's argument that the statute of limitations has not expired is unsupported by any evidence or case law.  All of defendant's actions that plaintiff asserts violated the FDCPA occurred more than one year prior to the filing of her lawsuit (i.e. the actions occurred before June 26, 2005).  Having determined that plaintiff's FDCPA cause of action is time-barred, the court does not need to address defendant's remaining argument that plaintiff has not adequately pled a FDCPA claim.

The court now turns to defendant's counterclaim.  Pursuant to Fed. R. Civ. P. 12(b)(6), a legally insufficient claim may be dismissed where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept.,

---

[9] In addition, the filing of the UCC-1 does not save plaintiff's §1692e(11) and §1692g claims. As discussed above, any claims involving the UCC-1 expired on November 15, 2005, one year after defendant filed the document. Furthermore, because the UCC-1 was filed with the San Diego County Recorder's office, it is unclear the filing of UCC-1 qualifies as §1692e(11) and §1692g violation, as both statutes place requirements on a "communication with the consumer."  See 15 U.S.C. §§ 1692e(11), 1692g; Cohen v. Beachside Two-I Homowners' Ass'n, 2006 WL 1795140, at *10 (D. Minn. June 26, 2006) (holding that 1692e(11) claims require a communication **with** the consumer).

901 F.2d 696, 699 (9th Cir. 1988). In deciding whether to dismiss a claim, the court is not required to credit conclusory legal allegations cast in the form of factual allegations, "unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Federal courts may dismiss *sua sponte* pursuant to Fed. R. Civ. P. 12(b)(6) when it is clear that the party has not stated a claim upon which relief may be granted. See Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir.1987) ("A trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6) . . . . Such a dismissal may be made without notice where the claimant cannot possibly win relief."); Ricotta v. State of Cal., 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998). Here, defendant alleges in his counterclaim that plaintiff's complaint is untimely and not well founded. Defendant further alleges that plaintiff improperly mischaracterized the UCC-1 as a lien in her complaint. (Answer ¶¶ 17-18.) In his counterclaim, defendant requests an award of attorney's fees under the FDCPA. Having reviewed defendant's counterclaim, the court finds that defendant has failed to identify a cognizable legal theory and the allegations supporting defendant's counterclaim are wholly conclusory statements. Defendant has simply recast the arguments raised in support of the instant summary judgment motion as a counterclaim against plaintiff. Defendant does not refer to any statutory or common law basis for his counterclaim. Defendant references 15 U.S.C. §1692(k), which is the FDCPA provision governing attorney's fees, but a request for attorney's fees is not a separate cause of action. Accordingly, dismissal of defendant's counterclaim is appropriate.

Lastly, at oral argument, defendant requested the court decline supplemental jurisdiction over plaintiff's remaining state law claims. Pursuant to 28 U.S.C. §1367(c), the district court has broad discretion to decline supplemental jurisdiction over claims where appropriate.[10] 28 U.S.C. §1367(c). "[I]n the usual case in which federal law claims are eliminated before trial, the balance of the factors of economy, convenience, fairness and comity will point toward declining to exercise jurisdiction over state law claims." O'Connor v. Nevada, 27 F.3d 357, 363 (9th Cir. 1994). In the instant case, the court

---

[10] Specifically, the court may decline supplemental jurisdiction under §1367(c) where:
1) the claim raises a novel or complex issue of State law,
2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
3) the district court has dismissed all claims over which it has original jurisdiction, or
4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. §1367.

1 has disposed of all claims that implicate federal law.  Moreover, plaintiff's remaining claims raise
2 novel issues of state law, including whether the filing of a UCC-1 in connection with a credit card
3 transaction is permissible under California's Uniform Commercial Code and whether the filing of a
4 UCC-1 in this context qualifies as a unfair business practice under Cal. Bus. & Prof. Code §17200 *et*
5 *seq.*  These are the types of issues that should first be addressed by the California courts.  See United
6 Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law
7 should be avoided both as a matter of comity and to promote justice between the parties, by procuring
8 for them a surer-footed reading of applicable law.").   Plaintiff has not articulated a sufficiently
9 compelling reason for the court to retain jurisdiction over this case.  Because there are no federal
10 causes of action remaining and the interests of comity so dictate, the court declines supplemental
11 jurisdiction over plaintiff's remaining claims.

## CONCLUSION

For the foregoing reasons, the court: 1) **grants** defendant's motion for summary judgement as to plaintiff's FDCPA claim; 2) **dismisses** defendant's counterclaim; and 3) **dismisses** plaintiff's state law claims without prejudice to being filed in state court.  The Clerk of Court is ordered to close this matter.  This order concludes the litigation in this case.

**IT IS SO ORDERED.**

**DATED: September 24, 2007**

_____
**HON. IRMA E. GONZALEZ, Chief Judge**
United States District Court
Southern District of California